IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

TERRANCE PRUDE, *et al.*,

        Plaintiffs,

v.

CORRECTIONAL OFFICER WARD, *et al.*,

        Defendants.

ORDER

18-cv-79-slc

_____

Six pro se plaintiffs are proceeding in this action against Wisconsin Secure Program Facility (WSPF) employees Gallinger, Ward, and Taylor, on Eighth Amendment claims challenging how Gallinger carried out a series of strip searches on December 14, 2018, and challenging Ward and Taylor's failure to stop Gallinger's abuse. Before the court is plaintiff Terrance Prude's motion for sanctions. (Dkt. 91.)[1] Prude claims that the defendants intentionally recycled the December 14, 2018, recordings from hallway surveillance cameras in order to destroy adverse evidence. Prude has asked that the court present a jury instruction on spoliation at trial. Prude is getting way ahead of himself on this issue, but I will rule on his motion to provide some guidance to both sides. I am denying Prude's motion, subject to renewal if Prude were to uncover evidence that corroborates his unsupported allegation of defendants' bad faith.

If a prison official destroys video footage in a bad faith effort to hide adverse information, then a plaintiff may be entitled to sanctions, including an instruction permitting the trier of fact to infer that the recording contained evidence supporting the plaintiff's claim. *See Bracey v. Grondin*, 712 F.3d 1012, 1019-20 (7th Cir. 2013). A showing of bad faith is the pivotal element,

---

[1] In his supporting brief, Prude reports that "all other plaintiffs will file a motion to join these filings" *(*dkt. 92 at 6, n.5), but none of them did.

and it is plaintiff's burden to present evidence beyond his own speculation that the footage existed and then was destroyed in order to hide adverse evidence. *See Rummery v. Ill. Bell. Tel. Co.*, 250 F.3d 553, 558 (7th Cir. 2001) (denying adverse inference instruction when moving party "offered no evidence, other than his own speculation, that [the documents] were destroyed to hide" incriminatory evidence). In this case, Prude has not shown that recordings of the strip searches ever existed, much less that defendants Ward, Taylor, or Gallinger caused or allowed any such recording to be destroyed in bad faith.

Here is the evidence Prude submits in support of his motion:

Prude wrote to Warden Gary Boughton and Security Director Mark Kartman, requesting that they preserve the footage of the strip search for the purpose of litigation. (Dkt. 43 at 31-49.) Boughton responded on December 20, 2017, writing that the institution saves video recordings when Security deemed it necessary, and advising Prude that if he required a video as it related to a conduct report, to indicate this need on a witness form. (Pl. Ex. 5 (dkt. 44-1 at 6).) Prude has submitted his hand-written letter to Warden Boughton dated December 25, 2017 in which he alleges that he wants the video preserved because he was strip searched in public, he "was violated" as indicated in his inmate complaint, he planned to bring a lawsuit about the manner in which he was searched, and the video recording supported his claims. (*Id.* at 7.) Prude has not included any response he received from Warden Boughton to this letter. Next he submits his September 29, 2017 information request to the Records Office, asking for the video.

(*Id.* at 9.)  The written response to this request indicates that it was received and processed on January 2, 2018, and that no materials meeting his description were found.  (*Id.* at 10.)[2]

On January 25, 2018, Prude submitted this request to Security Director Kartman regarding a *different* pat-down search that occurred on January 24, 2018:

> Can security please preserve the video recording from 1/24/18 Wednesday 11st shift between 12:00PM – 1:00PM of the pat search I received on my way to rec.  I have legal matters in court regarding the "manner" in which pat searches/strip search are conducted by staff.

(*Id.* at 12.)  Kartman responded on January 29, 2018 that "Only video deemed necessary by security is downloaded and preserved.  If this is related to a CR you may request video via witness form." (*Id.*)

In response to Prude's discovery request, on March 8, 2019, defendants represented that they did not possess any video footage of the December 14, 2017, searches, and that "[i]nstitution camera footage is not retained and is recorded over."  (Ex. 22 (dkt. 44-3, at 1).) As part of his written discovery, Prude asked: if a strip search is recorded, would the recording be available for viewing by security staff for up to five days? Defendants Gallinger, Ward, and Taylor responded "yes."

Prude also has submitted another prisoner's conduct report arising out of a different incident that took place in August of 2019.  In it, the reporting officer noted that the security

---

[2] Obviously, Prude has challenged this strip search through WSPF's inmate complaint system, as he asserts in the complaint, dkt. 1 at Par. (4),  and as is demonstrated by Warden Boughton's April 8, 2018 memo advising Prude that WSPF has dismissed his complaint and will not continue to revisit the topic, *see* dkt. 44-1 at 2.  The court does not know whether or how Prude or WSPF addressed the issue of the hall cameras during IC proceedings.

director asked him to review video footage to confirm whether two prisoners got into a fight that was the subject of the conduct report. (Dkt. 93-2.)

Defendants oppose Prude's motion on several grounds. First, they respond that the video Prude claims was destroyed "never existed in the first place." (Dkt. 99 at 3.) They explain that the hallway cameras would not have captured the challenged strip searches because each search took place inside each plaintiff's individual cell. The hall-mounted cameras are not aimed at and do not record the insides of prisoner cells. Similarly, defendants report that no recordings from a hand-held camera ever were made.[3]

In his reply (dkt. 102), Prude states that the plaintiffs never have claimed there were hand-held videos: Prude asserts that the strip searches were conducted in the door-frame of each cell door, which would have allowed the hallway cameras to capture the fact of the strip searches and the jumping jacks, along with the taunting reaction of staff, including female officers and other inmates. Because of these assertions, I cannot conclude that hallway cameras were incapable of recording relevant information.

Defendants next argue that Prude has not presented any evidence that Gallinger, Ward, or Taylor were involved in failing to preserve the hallway video recordings. Prude's evidence suggests simply that Kartman or Boughton may have received a request for this video footage before it was overwritten. Defendants note that neither Boughton nor Kartman faces liability in this lawsuit: Kartman is not a defendant, and Boughton is only a defendant in his capacity as

---

[3] Defendants explain that when an inmate complies with a strip search, then no recording is made. It's only when a defendant resists that a supervisor is called and a recording is made. Each plaintiff stated at his deposition that he complied with the strip search; therefore, no handheld recordings were made.

warden because plaintiffs are pursuing injunctive relief.[4]  I can hypothesize tacit complicity by Kartman or Boughton in the coverup alleged by Prude, but I can just as easily hypothesize that the tapes were recycled mundanely, in the ordinary course of business, because there was nothing of interest on them.  Absent evidence supporting Prude's bald assertion of skullduggery, there is no basis to impose sanctions against Ward, Taylor, or Gallinger.

Prude has not come forward with any evidence of bad faith.  Prude points to one unrelated conduct report in which video footage of a prisoner fight was retained, but you cannot connect the dots when you only have one dot. Prude contends that Boughton and Kartman's responses to his preservation requests demonstrate bad faith because, according to Prude, WSPF has a policy of only retaining video footage that would be unfavorable to prisoners. Prude has no evidence to support this contention.  Boughton and Kartman's bureaucratic responses to Prude's requests, both of which offered him a path toward preservation, do nothing to support Prude's assertion.  Prude has not presented any evidence suggesting that Kartman or Boughton knew that there would be damaging information on the hallway recordings and declined to retain it in order to avoid turning it over to Prude.  Looked at from the other direction, the defendants' position is that this incident never happened.  Even under Prude's theory, the images on the video would only circumstantially support his allegations.  Therefore, the failure to preserve– regardless who is responsible–proves nothing, implies nothing, and does not cause the court to infer anything close to bad faith.

---

[4] Recently, the only plaintiff who still was incarcerated at WSPF, Jermone Walker, informed the court that he has been transferred to Waupun Correctional Institution (dkt. 104), so there really is no need for Boughton to remain as a defendant.  That said, given the frequency with which the plaintiffs have been transferred during this lawsuit, I will not dismiss Boughton yet because a plaintiff might circle back to WSPF before this case is over.

Next, Prude's citation to defendants' discovery response related to the preservation of video footage does not suggest that any of the defendants knew about the video footage, much less that they caused or allowed it to be destroyed it in bad faith. Defendants' responses to Prude's general question acknowledge that *when* a strip search is recorded, security staff has five days to review the recording. But here, there were no recordings of the strip searches. All that ever existed were the recordings from the hallway cameras. The defendants' responses to Prude's question do not support or advance his claim of spoliation.

In sum, there is no basis to conclude that any of the defendants–or their superiors– destroyed video footage of the December 14, 2018 strip searches in an effort to conceal adverse evidence. Prude and his co-plaintiffs may seek reconsideration if they adduce additional evidence favorable to their contention of intentional spoliation.

## ORDER

It is ORDERED that plaintiffs' motion for sanctions (dkt. 91) is DENIED without prejudice.

Entered this 1st day of November, 2019.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge
