IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

          Plaintiff,

v.

SHAWN GALLINGER, BRANDON
WARD, MARY TAYLOR, and
GARY BOUGHTON,

          Defendants.

OPINION and ORDER

18-cv-79-slc

      Pro se plaintiff Terrance Prude is proceeding to trial on claims under the Eighth Amendment, that on December 14, 2017, at the Wisconsin Secure Program Facility (WSPF), defendant Shawn Gallinger carried out a strip search with the intent to humiliate and harass him, and defendants Mary Taylor and Brandon Ward failed to protect Prude from Gallinger's actions. After delays due to the COVID-19 pandemic and the dismissal of the claims of plaintiffs Andres Del Real, Troy Johnson, Daniel Mitchel, Miguel Garcia and Jerome Walker, this case is proceeding to trial on September 20, 2021.

      The court is holding a telephonic final pretrial conference ("FPTC") on September 8, 2021, at 2:00 p.m. In this order I address: unsealing this case; defendants' motion in limine (dkt. 164) and related motion for sanctions (dkt. 172); the parties' disclosed exhibits and witnesses; the court's proposed voir dire, jury instructions, and special verdict form (attached to this order); and defendants' motion to appear via videoconference (dkt. 173).

1

OPINION

**I.     Unsealing**

This entire case has been sealed since shortly after it was opened because plaintiffs claimed that public disclosure of this case will subject them to harassment, humiliation, intimidation and extortion by other inmates, and retaliation by WSPF staff. (*See* dkt. #26.) At that time, I noted at that certain documents may be unsealed at a later time upon an adequate showing that plaintiffs were not actually at risk of retaliation, harassment, intimidation, or extortion. Now that this case is proceeding to trial and Prude is no longer incarcerated at WSPF, I am unsealing this case. Even so, I will keep under seal the depositions of the former plaintiffs (*see* dkts. 71, 72, 73, 74, 75). If the parties wish to keep any other filings under seal, then not later than September 8, 2021 they must make a written request in which they identify these filing(s) and explain why the filing should remain under seal. Absent a specific showing by Prude that he will suffer harassment or embarrassment, I do not intend to keep under seal any documents or evidence that will be admitted at trial.

**II.    Defendants' Motion for Sanctions (dkt. 172) and Motions in Limine (dkt. 164)**
      **A. Sanctions**

Since Prude made no pre-trial filings in accordance with the most recent trial schedule, defendants ask that I limit Prude's evidence to nothing more than his own testimony as a sanction for his failure to comply with the court's scheduling order. Prude has not responded to the motion. I am granting it in part and denying it in part. Although Prude has not submitted any pretrial filings in accordance with the court's most recent scheduling order, in April of 2020, Prude filed pretrial submissions in accordance with the scheduling order in place

2

at that time, *see* dkts. 125, 127, 128, 129.  Those submissions did not include a list of witnesses, but it did disclose a number of exhibits.  Therefore, I will not allow Prude to call any witnesses, and Prude may not call defendants' witnesses adversely.  However, I will permit Prude to admit the exhibits previously disclosed (dkt. 128), as limited *infra.*

### B.  MIL #1

In their first of seven motions in limine, defendants seek an order prohibiting testimony and argument regarding any of the defendants' sexual history, orientation, or exposure to pornography.  I previously granted defendants' motion for protection from Prude's discovery requests on these same topics, deeming them intentionally vexatious with no realistic potential to adduce relevant evidence.  (*See* June 25, 2019 Order, dkt. 57, at 2.)  Nothing has changed. Defendants' MIL #1 is GRANTED.

### C.  MIL #2

Defendants seek an order prohibiting Prude from referencing the Prison Rape Elimination Act (PREA), sexual assault, or retaliation.  They point out that Prude is not proceeding—indeed, cannot proceed--on a claim under the PREA, nor has the court granted Prude leave to proceed on a sexual assault or retaliation claim.  Moreover, Prude concedes that none of the defendants ever physically touched him, let alone sexually assaulted him.  Prude's sole claim, under the Eighth Amendment, is that defendant Gallinger conducted a strip search in a manner intending to humiliate him and that defendants Taylor and Ward failed to intervene.  Accordingly, defendants want Prude prohibited from claiming that he was "raped" or "sexually assaulted."

Prude has agreed not to reference sexual assault or retaliation.  However, Prude argues that he should be able to reference the PREA because of the sexual nature of Gallinger's alleged

3

comments while ordering Prude to perform jumping jacks while naked. In particular, Prude believes that the PREA is relevant to Gallinger's behavior because the PREA references sexually offensive comments. But Prude has not alleged a PREA violation. This is an Eighth Amendment lawsuit. Prude is free to argue that the sexual nature of Gallinger's alleged comments were intended to humiliate him and, did in fact humiliate him, but this alleged verbal misconduct, by itself, does not sufficiently implicate the PREA to make the Act relevant to this trial. Conversely, linking Gallinger's alleged comments to a rape elimination statute would serve only to confuse the jury and prejudice defendants. Accordingly, defendants' MIL #2 is GRANTED.

### D. MIL #3

Defendants seek an order prohibiting reference to spoliation or destruction of evidence, citing my rulings denying Prude's motion for sanctions on the ground that defendants did not produce video footage of the strip searches. I first addressed this issue in a November 1, 2019 order, in which I found that although the hallway cameras were not positioned to catch the actual performance of the challenged strip search, they might have recorded other relevant evidence, but there was no evidence that anyone improperly destroyed or recycled these recordings: "Even under Prude's theory, the images on the video would only circumstantially support his allegations. Therefore, the failure to preserve—regardless who is responsible—proves nothing, implies nothing and does not cause the court to infer anything close to bad faith." (Dkt. 106 at 5.)

In opposition, Prude agrees that he is not entitled to an adverse inference instruction at trial. But he still insists that he should be able to mention that the video footage existed at one point, since he asked that the footage of Gallinger's behavior be reviewed and no one

4

conducted the review. However, Prude is not proceeding in this lawsuit on claims against any prison officials for their alleged failure to review footage of the strip searches, so his efforts to have that footage reviewed are not relevant to his claims in this lawsuit.

Prude also asks that if the defendants reference the video footage of the strip searches, he be allowed to discuss the absence of the footage. That's fair. But defendants have to raise this in their defense case. Prude cannot raise it proactively in his case in chief. Defendants have not indicated that they intend to refer to any video evidence, but if they do, then Prude may adduce evidence of his unsuccessful efforts to review and preserve the footage.

Other than this, allowing Prude to refer to cameras or videos when the jury will not see any videos most likely would have the same effect as an adverse inference instruction: it would allow the jury to infer that the defendants or their colleagues deep-sixed the recordings to prevent the jury from seeing them. My previous ruling on this point remains in place, subject to the limited qualifier set forth above. Defendants' MIL #3 is GRANTED.

### E. MIL #4

Defendants seek an order prohibiting reference to attempts to settle, as irrelevant. Prude does not object, so the motion is GRANTED.

### F. MIL #5

Defendants seek an order prohibiting reference to any other lawsuits, inmate complaints, or newspaper articles against the defendants or the Wisconsin Department of Corrections. Prude does not object, so the motion is GRANTED.

**G. MIL #7**[1]

Defendants seek to dismiss Boughton as a defendant, since he only remained in the lawsuit for purpose of injunctive relief and Prude no longer is incarcerated at WSPF, where he is the warden.  Since Prude does not object, the motion is GRANTED.

**H. MIL #8**

Finally, defendants seek a ruling limiting Prude's compensatory damages to $1, citing 42 U.S.C. § 1997e(e).  Under § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18). ".  The term "sexual act" is defined as contact between the penis and vulva or anus; contact between the mouth, and penis, vulva or anus; the penetration of the anal or genital opening of another; or the intentional touching of the genitalia of another person.  18 U.S.C. § 2246(2).

Defendants point out that because Prude readily admits that Gallinger never touched him, there is no proof of a sexual act, and the record does not suggest Prude suffered a physical injury.  Prude has not responded to this motion.  Absent a showing at the FPTC of good cause for his failure to timely respond, *and* a proffer of evidence of physical injury or a sexual act sufficient to satisfy the requirements of § 1997e(e), I will grant this motion.  For now, MIL #8 is RESERVED.  If I grant this motion, I will make necessary adjustments to the post-trial jury instructions and special verdict form.

---

[1] There is no MIL #6.

**IV.    Exhibits (dkts. 166, 128)**

Defendants filed their proposed exhibits (dkt. 166 and attachments), and Prude has not objected. With the one limitation to Exhibit 502, I intend to permit defendants to submit their proposed exhibits as filed. Defendants' Exhibit 502 (dkt. 166-2) is a 6-page document listing the bed assignments for Prude and the five former plaintiffs. The bed assignments for these other individuals does not appear relevant to Prude's claim, so defendants should pare down this exhibit to just Prude's placement, or explain at the FPTC why they need to introduce those additional bed assignments.

Prude submitted his proposed exhibit list back in April 2020 (dkt. 128), and at that time defendants raised several objections (dkt. 132), which I take as the operative filings related to Prude's exhibits. As an initial matter, Exhibit 4 relates to former plaintiff Del Real's claim, so I will exclude this exhibit as irrelevant. As for the remaining exhibits, I make the following rulings on defendants' objections:

- Exhibits 2, 5-13, 16-19, 20, 22. These exhibits were submitted as a part of Prude's motion for summary judgment (*see* dkt. 44). Defendants do not object to Exhibits 1, 3, 14, 15, or 21, but defendants point out that Exhibits 2, 5-13, 18-19, 20, and 22 relate to Prude's spoliation motion, which is not part of Prude's claims proceeding to trial (*see* MIL #3, *supra*). Defendants' objection to these exhibits is therefore sustained. Defendants object to Exhibits 16 and 17 of Dkt. 44 on hearsay and/or relevance grounds. Exhibits 16 and 17 are Prude's mental health records, which are relevant to his psychological injuries. However, I do agree with defendants that there might be a hearsay problem with these exhibits since Prude does not have an accompanying affidavit to support the admissibility of these

materials as business records. I will hear further from the parties with respect to these records during the FPTC.

- Exhibits 81, 82, 83: Affidavits of defendants Mary Taylor, Brandon Ward, and Shawn Gallinger. Defendants object on hearsay grounds, stating that while Prude may be able to use the defendants' sworn statements for impeachment purposes, Prude may not use these statements proactively as substantive evidence against them. These affidavits are admissible as statements by a party opponent, *see* Fed. R. Evid. 801(d)(2). As such, defendants' objection to these exhibits is overruled.

- PREA Policy. Defendants object to this policy as irrelevant, confusing, and unduly prejudicial, for the same reasons defendants raise in their motion in limine. I agree that the PREA policy should be excluded under Rule 403, since it has little if no potential relevance, would confuse the issue actually to be decided by the jury and would tend to unfairly prejudice defendants. Therefore, defendants' objection is sustained.

- Memo from PSU worker Matthew Richard. Defendants object because they did not receive a copy of this exhibit, on hearsay grounds, and because they did not receive notice that Matthew Richard would be a witness. I will reserve on this objection after hearing from Prude on defendants' objection.

Although not raised by defendants, I note that Prude's "Exhibit 1000" is a photograph defendants filed at dkt. #83-1. It appears that this duplicates defendants' Ex. 508. If they are the same, then the parties are to confer and agree on which exhibit will be admitted, to avoid duplication. Finally, prior to the FPTC, I ask that Prude designate the exhibits I am allowing

8

him to admit as numbers between 1 and 500, in chronological order, to avoid confusing the jury.

V.  Voir Dire, Jury Instructions, and Verdict Form

   A. Voir Dire

Defendants and Prude submitted proposed voir dire questions to supplement the court's standard questions. Prude proposes 54 questions, *see* dkt. 127. Defendants object to Prude's proposed questions 3, 6-7, 34-35, as duplicative; questions 5, 8-14, 17, 39-44, and 47, on relevance grounds; questions 45-46 and 52-53 as vague and irrelevant to a person's competence as a juror; and questions 8, 22-23, and 28-29 as vague, confusing and without context.

After reviewing Prude's submissions, I have included questions related to how the potential jurors feel about prisoners and law enforcement generally. However, Prude includes a series of questions related to sexual harassment, often in the context of the workplace setting, or general questions related to whether potential jurors would be willing to speak up in a sexual harassment situation. This case is not about sexual harassment, or harassment in the workplace; it is about whether Gallinger conducted a strip search in a manner intended to humiliate Prude, and whether Taylor and Ward failed to intervene. The questions in the court's voir dire should suffice to allow the court to strike for cause and to allow the parties intelligently to exercise their peremptory strikes.

The remaining questions are fairly standard, and I have included the standard questions this court has been asking related to COVID-19. I ask that the parties carefully review the statement of the case and come to the FPTC prepared with any proposed revisions.

### B. Jury Instructions

Prude did not submit any proposed jury instructions. For the most part, I incorporated defendants' proposed instructions along with the court's standard instructions. Consistent with defendants' submissions, the proposed instructions do not anticipate bifurcation, and at this point include the instruction for compensatory damages, which may be excluded based on my ruling on MIL #8.

### C. Special Verdict

Defendants submitted a proposed special verdict form with eight questions. The court's proposed special verdict form consists of ten questions, separating the liability question for Ward and Taylor. Again, if I grant MIL #8, I will adjust the special verdict form to omit any question related to compensatory damages.

## VI. Motion to Appear by Videoconference (dkt. 173)

Finally, defendants ask that witness Catherine Broadbent be permitted to appear via videoconference so that she does not need to disrupt her work schedule and to facilitate the court's social distancing measures. I will grant this motion and ask defendants to work with the clerk's office and the court's IT department, as well as to come to the FPTC with a proposed schedule of their witnesses, so that we can plan accordingly.

ORDER

It is ORDERED that:

1. Defendants' motion in limine (dkt. 164) is GRANTED in part and RESERVED in part, as provided above.

2. Defendants' motion for sanctions (dkt. 172) is GRANTED in part and DENIED in part.

3. Defendants' motion for Catherine Broadbent to appear at trial by videoconference (dkt. 173) is GRANTED.

4. Defendant Boughton is DISMISSED from this lawsuit.

5. By **September 8, 2021,** the parties shall show cause as to why any specific filings, identified by docket number, should remain sealed. Following the FPTC, I will direct the clerk of court to unseal this lawsuit.

Entered this 3rd day of September, 2021.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge